RECEIVED

SEP 2 5 2012

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

---

DONALD MITCHELL

-vs-

WEYERHAEUSER NR CO.

CIVIL ACTION NO. 10-1240

JUDGE DRELL

MAGISTRATE JUDGE KIRK

---

RULING

Before the Court are several pending motions. The first is a Motion for Summary Judgment by Weyerhaeuser NR Company ("Weyerhaeuser").[1] (Doc. 31). The second is a "Motion to Strike the Declaration of Billy Benefield, Jr." by Donald Mitchell ("Mr. Mitchell"). (Doc. 36). The third is a "Motion to Strike the Declaration of Peter John Corak" also by Mr. Mitchell. (Doc. 55). For the following reasons, the motions to strike (Docs. 36 & 55) will be **DENIED**. The Motion for Summary Judgment (Doc. 31) will be **GRANTED in PART and DENIED in PART.**

I.      Procedural Background

On September 4, 2010, Plaintiff filed a Complaint (Doc. 1) alleging Defendant violated Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. § 2000(e), *et seq.* and 1981 ("Title VII") and La. R.S. § 23:301, *et seq.* Specifically, Plaintiff, an African-American male, claims he was the subject of employment

---

[1] Plaintiff's Complaint (Doc. 1) names Weyerhaeuser Company as the defendant. However, the Answer (Doc. 13) identifies the appropriate defendant to be Weyerhaeuser NR Company.

discrimination, harassment, and retaliation in violation of the aforementioned statutes.

Mr. Mitchell began his employment with Weyerhaeuser sometime in 1995 or 1996 at Defendant's plant located in Natchitoches, Louisiana ("the Natchitoches plant").[2] In October of 2008, Plaintiff sent an anonymous letter ("the letter") to Weyerhaeuser Vice President, Cathy Slater ("Ms. Slater"). (Doc. 31, Exhibit M-2 attached to Exhibit B). The letter reported "unprofessional, intimidating and bulling [sic] outbursts" by Steve Story ("Mr. Story"), the Natchitoches plant manager. The specific complaints of the letter will be addressed *infra* in relation to Mr. Mitchell's claims. Ms. Slater initiated an investigation at the Natchitoches plant in response to the letter in November of 2008. Mr. Story wrote a negative performance evaluation for Plaintiff in December of that year, and Mr. Mitchell was terminated shortly thereafter in February of 2009.

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on February 10, 2009 (See Doc. 32-4, Exhibit 41) on the basis of retaliation and race discrimination. He received a notice of right to sue on May 24, 2009, and the present suit followed. Defendant filed the summary judgment motion (Doc. 31), and Plaintiff responded in opposition (Docs. 38 & 39). In support of its motion for summary judgment, Defendant attached a Declaration by Billy Benefield, Jr. ("Mr. Benefield"), the Human Resources ("HR") manager for the Natchitoches plant. (Doc. 31-3). Plaintiff

---

[2] Mr. Mitchell's employment start date is unclear from the record, but he was initially hired by Trus Joist Corporation which was acquired by Weyerhaeuser in . Mr. Mitchell was promoted to the position of graveyard press supervisor in 2000 and maintained that position until his termination on February 5, 2009.

filed a motion to strike Mr. Benefield's declaration. (Doc. 36). Defendant opposed the

motion (Doc. 42) and included a supplemental declaration by Mr. Benefield (Doc. 42-1)

and a declaration by Peter John Corak ("Mr. Corak"), the Weyerhaeuser corporate HR

Director to support Mr. Benefield's statements. (Doc. 48-1). Plaintiff then filed a

motion to strike Mr. Corak's declaration (Doc. 55) which Defendant has also opposed.

(Doc. 57). We first address the motions to strike because they affect the admissibility

of summary judgment evidence.

II.    Law and Analysis

    A.    Motions to Strike Declarations

    Both disputed declarations must meet the requirements of Fed. R. Civ. P.

56(c)(4): they "must be made on personal knowledge, set out facts that would be

admissible in evidence, and show that the affiant or declarant is competent to testify

on the matters stated." Mr. Benefield's declaration attributes Mr. Mitchell's

termination to "reductions in force and plant closures" resulting from the "drastic

downturn in the United States' housing market." (Doc. 31-3, ¶¶ 9–17). Plaintiff

disputes the basis of Mr. Benefield's personal knowledge of such information. Mr.

Benefield's supplemental declaration and Mr. Corak's declaration carefully set forth

Weyerhaeuser's policies and procedures for tracking the company's production and

output at difference facilities and related sales and employment numbers. (Docs. 42-1

& 48-1). In their administrative positions, Mr. Corak and Mr. Benefield reasonably

have access to and knowledge of the numbers fueling Weyerhaeuser's business

decisions. We find Mr. Corak and Mr. Benefield have set forth a sufficient basis for

3

personal knowledge of the <u>facts</u> contained in their respective declarations, and the motions to strike (Docs. 36 & 55) will be **DENIED**. However, their opinions and inferences relating to the causation for Mr. Mitchell's termination will be weighed amongst the totality of admissible evidence regarding the summary judgment. In other words, simply because Mr. Corak and Mr. Benefield have declared Plaintiff was legitimately fired does not make it so.

    **B.**    **Motion for Summary Judgment**

    *1.*    <u>*Summary Judgment Legal Standard*</u>

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although Rule 56 was amended effective December 1, 2010, "the amended rule contains no substantive change to the standard." <u>Seacor Holdings, Inc. v. Commonwealth Ins. Co.</u>, 635 F.3d 675, 680, n.8 (5th Cir. 2011). Accordingly, we equate the word "issue" in the old language of Rule 56 with "dispute" in the amended version. An issue as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). We consider all "evidence in the light most favorable to the party resisting the motion." <u>Trevino v. Celanese Corp.</u>, 701 F.2d 397, 407 (5th Cir. 1983). It is important to note the standard for a summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, *and* (2) the movant is entitled to judgment as a matter of law.

2.    *Race Discrimination Claim*

A discrimination claim pursuant to Title VII may properly be considered on a motion for summary judgment. See, e.g., Okoye v. Univ. of Texas Houston Health Sci. Ctr., 245 F.3d 507 (5th Cir. 2001); McCoy v. City of Shreveport, 492 F.3d 551 (5th Cir. 2007). In order to succeed on its motion for summary judgment, Defendant must show there is no genuine dispute as to any material fact that Plaintiff cannot prove the required elements of his discrimination claims. McCoy, 492 F.3d at 556.[3] In order to establish a prima facie case for discrimination, Plaintiff must provide evidence that he:

(1)    is a member of a protected group;

(2)    was qualified for his position;

(3)    was subject to an adverse employment action; and

(4)    was replaced by someone outside the protected class, or, in the case of disparate treatment, must show that others similarly situated were treated more favorably.

Id. at 512–13 (internal quotations and citations omitted). The flagship Title VII case is McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). In McDonnell Douglas, the United States Supreme Court employed a framework for summary judgments which requires a plaintiff to prove his prima facie case before shifting the burden to the

---

[3]  Mr. Mitchell seeks relief under Title VII and the Louisiana Employment Discrimination Law, codified at La. R.S. § 23:301, *et seq.* (Doc. 1). The Fifth Circuit Court of Appeals has found the Louisiana state law anti-discrimination statute to be "'substantively similar' to Title VII, and Louisiana courts routinely look to the federal jurisprudence for guidance." McCoy, 492 F.3d at 556, n.4 (quoting Trahan v. Rally's Hamburgers, Inc., 696 So.2d 637, 641 (La. App. 1 Cir. 1997)). Following controlling jurisprudence, we "analyze the issues only under the applicable federal precedents" since "the outcome of [Mr. Mitchell's] statutory discrimination and retaliation claims will be the same under federal and state statutes." Id.

defendant to articulate a "legitimate, nondiscriminatory reason for the employment action." Id. at 802. This basic framework has been used extensively in the Fifth Circuit. See McInnis v. Alamo Community College Dist., 207 F.3d 276 (5th Cir. 2000).

However, shifting the burden to the defendant is triggered only by the plaintiff's ability to set forth a prima facie case for discrimination. For the following reasons, Plaintiff in the current matter has failed to meet the elements for his prima facie case, and we need not address the legal standards required of the defendant under the McDonnell Douglas framework.

As to the specific elements, Mr. Mitchell is African-American and therefore a member of a protected group. Although he had received negative performance evaluations prior to his termination, Weyerhaeuser has assumed (at least, for the purposes of the summary judgment motion) that Mr. Mitchell was qualified for his position. (Doc. 33 at p. 23). Plaintiff's adverse employment action was his termination in February of 2009.

However, Mr. Mitchell is unable to show facts to support the fourth element of his prima facie case. The record does not reflect Plaintiff was "replaced" by anyone; therefore, he must show disparate treatment. Weyerhaeuser has presented the following undisputed facts: (1) eight salaried supervisors were evaluated during the plant-wide reduction in force; (2) of those eight supervisors, three were African-American and five were Caucasian; (3) of the four terminated supervisors, three were Caucasian and one (Plaintiff) was African-American. Clearly, Caucasians were not treated more favorably compared to Mr. Mitchell in the February 2009 supervisor

terminations, and Plaintiff has identified no evidence to the contrary. Because he is

unable to establish a prima facie case for race discrimination for his termination

under Title VII and Louisiana state law (see note 3 *supra*), Defendant is entitled to

judgment as a matter of law and its motion for summary judgment will be **GRANTED**

as to the race discrimination claim.

   3.    *Harassment Claim*

The Supreme Court has decided that "hostile work environment claims based

on racial harassment are reviewed under the same standard as those based on sexual

harassment." National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 116, n.10

(2001). The Fifth Circuit has identified the following standard for evaluating claims

based on such harassment:

   (1)    plaintiff is a member of a protected group;

   (2)    plaintiff was the victim of uninvited [racial] harassment;

   (3)    the harassment was based on [race];

   (4)    the harassment affected a term, condition, or privilege of
          [plaintiff's] employment;[4] and

   (5)    plaintiff's employer knew or should have known of the
          harassment and failed to take prompt remedial action.

_____

[4]  The Fifth Circuit has provided further guidance as to this element:
Harassment affects a 'term, condition, or privilege of employment if it is sufficiently severe or
pervasive to alter the conditions of the victim's employment and create an abusive working
environment. Workplace conduct is not measured in isolation. In order to deem a workplace
environment sufficiently hostile, all of the circumstances must be taken into consideration. This
includes the frequency of the discriminatory conduct; its severity; whether it is physically
threatening or humiliating, or a mere offensive utterance; and whether it unreasonably
interferes with an employee's work performance.
Hernandez v. Yellow Transportation, Inc., 670 F.3d 644, 651 (5th Cir. 2012) (internal citations and
quotations omitted).

<u>Harvill v. Westward Communications, L.L.C.</u>, 433 F.3d 428, 434 (5th Cir. 2005)
(internal quotations and citations omitted).

As discussed above, Plaintiff is a member of a protected group. In his
anonymous letter to Ms. Slater, Mr. Mitchell reporting hearing about a racist "joke"
told by Darryl Jackson, a maintenance supervisor, in Mr. Story's presence. (Doc. 32,
Exhibit M-2). Specifically, Mr. Jackson "joked" about "killing blacks" and used
extremely inflammatory and racist language as reported in the letter and Mr.
Mitchell's deposition. (Doc. 32 at pp. 83–88 and Exhibit M-2). Despite the extremely
offensive nature of the "joke," Mr. Mitchell learned about the comment from a
colleague and he was not present when it was told nor was it directed at him. Mr.
Mitchell also reported hearing from another colleague that Mr. Jackson had made
comments concerning then President-elect Obama's ability to be in office based on
his race. (Doc. 32 at p. 90).

The comments at issue were isolated incidents by an individual, and
Weyerhaeuser took "prompt remedial action" when Mr. Story immediately warned
and counseled Mr. Jackson and subsequently terminated him. (Doc. 32-2 at pp. 101
&122). Plaintiff has been unable to identify occasions on which he was the victim of
racial harassment or even present when inflammatory comments were made. Mr.
Mitchell is unable to prove a prima facie case for racial harassment based on the
totality of the circumstances, and we find Defendant is entitled to judgment as a
matter of law and its summary judgment will be **GRANTED** as to this claim. In so
doing, we note the highly offensive, inflammatory, and inappropriate nature of Mr.

Jackson's remarks. We do not presume that the comments, simply because they were not directed at Mr. Mitchell, had no impact on Plaintiff. However, the undisputed facts do not demonstrate a legally cognizable claim for racial harassment considering the circumstances as a whole, particularly Weyerhaeuser's action of terminating Mr. Jackson.

     *4.*     *Retaliation Claim*

     In order to establish a prima facie case for retaliation, the plaintiff must provide evidence that:

     (1)     he was engaged in a protected activity;

     (2)     an adverse employment action occurred; and

     (3)     a causal link existed between the protected activity and the adverse action.

Septimus v. Univ. of Houston, 399 F.3d 601, 610 (5th Cir. 2005) (internal citations omitted). It is undisputed that Mr. Mitchell's anonymous letter was the catalyst to the investigation against Mr. Story, but the parties disagree that the sending of the letter constitutes "protected activity" under Title VII. The Fifth Circuit determined an "employee has engaged in activity protected by Title VII if []he has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." Grimes v. Texas Dep't of Mental Health and Mental Retardation, 102 F.3d 137, 140 (5th Cir. 1996) (citing 42 U.S.C. § 2000e-3(a) and Long v. Eastfield College, 88 F.3d 300, 304 (5th Cir. 1996))(emphasis added).

Our colleague in the Eastern District of Texas, Judge Cobb, found protected activity under the opposition clause of Title VII given similar facts in <u>Jones v. United States Auto Club</u>, 1992 WL 52570, at *3 (E.D. Tex. Feb. 19, 1992). In <u>Jones</u>, the plaintiff sent an anonymous letter to Defendant's Vice President of Human Resources. <u>Id.</u> at *1. The anonymous letter in <u>Jones</u> stated that "members of the U.S. Auto Club management were discriminating against blacks with respect to promotions and that the discriminatory practices were causing low morale." <u>Id.</u> Such reports are very similar to those made by Mr. Mitchell in his letter to Ms. Slater. We find Mr. Mitchell's anonymous letter constitutes an opposition to Mr. Story's alleged harassment and is considered "protected activity" for the purposes of establishing a prima facie case of retaliation.

The adverse employment action against Mr. Mitchell was his termination in February of 2009. Finally, we consider the existence of a causal link between the protected activity and the adverse employment action. It is on this element that we find a genuine dispute of material fact concerning whether the decision makers actually *knew* Mr. Mitchell authored the anonymous letter. To begin, there were only about three months between the sending of the letter and Plaintiff's termination, and this temporal proximity may weigh in favor of finding a causal link. See <u>Swanson v. General Services Administration</u>, 110 F.3d 1180, 1188 (5th Cir. 1997) (citing <u>Armstrong v. City of Dallas</u>, 997 F.3d 62, 67 (5th Cir.; 1993)). However, the most crucial inquiry is whether those individuals responsible Mr. Mitchell's termination *knew* he had engaged in protected activity such that their actions could be

10

considered retaliatory in nature. Although Defendant insists none of the decision makers–Mr. Story, Mr. Benefield, or Mr. Greg Gordon–had knowledge Mr. Mitchell wrote the letter, there is a dispute in the record as to evidence in support or to the contrary. Unsurprisingly, Defendant asserts none of the decision makers "saw or became aware that Mitchell authored the letter until after this litigation commenced." (Doc. 31-1 at p. 7).[5] However, Plaintiff testified Mr. Story suggested he did know Plaintiff played some role in the investigation against him. In his deposition, Mr. Mitchell testified Mr. Story told him the following upon presenting Mr. Mitchell with his negative year end evaluation on December 19, 2008: "Donald, I know this stings but you're feeling the way I felt when I found out the result of the investigation 24 hours ago." (Doc. 39-1 at pp. 110–11). At the summary judgment stage, we are not permitted to evaluate the credibility of testimonial evidence. Mr. Story's vengeful statement coupled with the temporal proximity of the adverse employment action to the letter presents, we think, a genuine dispute of material fact as to Plaintiff's retaliation claim. Accordingly, Defendant's motion for summary judgment will be **DENIED** as to this claim.

III.   Conclusion

For the foregoing reasons, Plaintiff's Motions to Strike the Declarations of Billy Benefield, Jr. (Doc. 36) and Peter John Corak (Doc. 55) will be **DENIED**. Defendant's

---

[5] In his deposition, Mr. Gordon responded "no" when asked if he knew "about any so-called anonymous letter that was sent to one of the corporate vice presidents." (Doc. 32-3 at pp. 85–86). In his deposition, Mr. Story testified he was advised on November 7, 2008 of the investigation instigated by an anonymous letter, but he was unaware of any details of the letter. (Doc. 32-2 at pp. 114–15). The parties have not identified Mr. Benefield's testimony of denying knowledge about who wrote the letter, and we were unable to locate such through our independent review of the excerpts of his deposition provided in the record.

Motion for Summary Judgment (Doc. 31) is **GRANTED in PART** insofar as it requests

dismissal of Plaintiff's race discrimination and harassment claims. However,

Defendant's motion (Doc. 31) is **DENIED in PART** as to Plaintiff's retaliation claim.

Disposition will enter by a separate judgment signed on this date.


SIGNED on this 25 day of September, 2012 at Alexandria, Louisiana.


DEE D. DRELL
UNITED STATES DISTRICT JUDGE

12